*1239 Barham, Warner & Bellamy, L.L.C. v. Strategic All. Partners, L.L.C. , 09-1528, p. 6 (La. App. 4 Cir. 5/26/10), 40 So.3d 1149, 1152.
Further, the Louisiana Supreme Court expounded upon this Court's standard practice of appellate review, as follows:
It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO , 549 So.2d 840, 844 (La. 1989). However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. Ferrell v. Fireman's Fund Ins. Co. , 94-1252 (La. 2/20/95), 650 So.2d 742, 747, rev'd in part, on other grounds , 96-3028 (La. 7/1/97), 696 So.2d 569, reh'g denied , 96-3028 (La. 9/19/97), 698 So.2d 1388. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. See Lasha v. Olin Corp. , 625 So.2d 1002, 1006 (La. 1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. See Lasha , 625 So.2d at 1006. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo . Lasha , 625 So.2d at 1006.
Evans v. Lungrin , 97-0541, pp. 6-7 (La. 2/6/98), 708 So.2d 731, 735.
TIMELINESS
Firstly, Defendants challenge the timeliness of the filing of Mercato's Limited Motion for New Trial.
The time delay for applying for a new trial is seven days, not including legal holidays. La. C.C.P. art. 1974. "The delay ... commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913." Id. La. C.C.P. art. 1913(D) provides that "[t]he clerk shall file a certificate in the record showing the date on which, and the counsel and parties to whom, notice of the signing of the judgment was mailed." "We have held repeatedly that, when notice of the signing of a judgment is required by Article 1913(B), the delays for new trial motions and appeals do not run unless and until the clerk mails the required notice." Potter v. Patterson , 96-1172, p. 5 (La. App. 4 Cir. 3/19/97), 690 So.2d 1118, 1121.
The judgment was signed on January 9, 2017. As noted by the trial court, the clerk's certification does not indicate what date the judgment was mailed. The trial court then looked to other evidence. Specifically, the trial court stated that the envelope containing the judgment "was stamped by the Court's postage machine on January 10, 2017 - which [was] the earliest possible day that the judgment was mailed." Mercato filed the Limited Motion for New Trial on January 20, 2017. This time period included three days of legal holidays. Thus, the trial court found that if the judgment was mailed on January 10, 2017, then the January 20, 2017 filing of the Limited Motion for New Trial was timely.[6]
*1240 As previously stated, the Defendants sought supervisory review of the timeliness issue, which this Court denied. No writ was filed with the Louisiana Supreme Court.
"The law of the case refers to a policy by which the court will not reconsider prior rulings in the same case." KeyClick Outsourcing, Inc. v. Ochsner Health Plan, Inc. , 11-0598, p. 7 (La. App. 4 Cir. 3/14/12), 89 So.3d 1207, 1211. "The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal." Id. "The policy reasons behind the doctrine include: (i) avoiding re-litigation of the same issue, (ii) promoting consistency of result in the same litigation, and (iii) promoting efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue." KeyClick , 11-0598, pp. 7-8, 89 So.3d at 1211-12. The application of the law of the case is discretionary. Id. , 11-0598, p. 8, 89 So.3d at 1212. However, " '[a]rgument is barred where there is merely doubt as to the correctness of the former holding, but not in cases of palpable former error or so mechanically as to accomplish manifest injustice.' " Bank One, Nat. Ass'n v. Velten , 04-2001, p. 6 (La. App. 4 Cir. 8/17/05), 917 So.2d 454, 459, quoting Petition of Sewerage and Water Bd. of New Orleans , 278 So.2d 81, 83 (La. 1973).
Having reviewed the trial court's reasoning for finding that the Limited Motion for New Trial was timely and the doctrine of law of the case, we find no "palpable former error" to justify relitigating the issue.
MOTION FOR NEW TRIAL
Defendants contend that the trial court committed manifest error by finding, on the motion for new trial, that Exhibit G was a public record and concluded that Defendants were noncompliant with public record law. Thus, we must determine whether Exhibit G is a public record.
Louisiana Public Records Law
"Under Louisiana law, any person of the age of majority may inspect, copy or reproduce or obtain a reproduction of a public record 'except as otherwise provided in this Chapter or as otherwise specifically provided by law.' " Capital City Press v. E. Baton Rouge Par. Metro. Council , 96-1979, p. 4 (La. 7/1/97), 696 So.2d 562, 564, quoting La. R.S. 44:31. The Louisiana Supreme Court explained Louisiana public records law as follows:
The legislature, by enacting the "Public Records Law" ( LSA-R.S. 44:1 et seq. ), sought to guarantee, in the most expansive and unrestricted way possible, the right of the public to inspect and reproduce those records which the laws deem to be public. There was no intent on the part of the legislature to qualify, in any way, the right of access. See Landis v. Moreau , 00-1157 (La. 2/21/01), 779 So.2d 691, 694-95.
The legislature has recognized that it is essential to the operation of a democratic government that the people be made aware of all exceptions, exemptions, and limitations to the laws pertaining to public records. LSA-R.S. 44:4.1(A). In order to foster the people's awareness, the legislature declared that all exceptions, exemptions, and limitations to the laws pertaining to public records shall be provided for in the Public Records Law or the Constitution of Louisiana. Id. Any exception, exemption, and limitation to the laws pertaining to public records not provided for in the *1241 Public Records Law or in the Constitution of Louisiana has no effect. Id. Thus, access to public records can be denied only when the Public Records Law or the Constitution specifically and unequivocally provide otherwise. See DeSalvo v. State , 624 So.2d 897, 902 (La.1993), cert. denied , 510 U.S. 1117, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994).
As with Article XII, Section 3, the Public Records Law should be construed liberally in favor of free and unrestricted access to public documents. Landis v. Moreau , 779 So.2d at 695 ; Title Research Corporation v. Rausch , 450 So.2d 933, 937 (La.1984). Whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right to see; to allow otherwise would be an improper and arbitrary restriction on the public's constitutional rights. In re Matter Under Investigation , 07-1853 (La. 7/1/09), 15 So.3d 972, 989 ; Capital City Press v. East Baton Rouge Parish Metropolitan Council , 96-1979 (La. 7/1/97), 696 So.2d 562, 564 ; Title Research Corporation v. Rausch , 450 So.2d at 936.
Shane v. Par. of Jefferson , 14-2225, pp. 9-10 (La. 12/8/15), 209 So.3d 726, 734-35. La. R.S. 44:1(A)(2)(a) defines a public record as
All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records", except as otherwise provided in this Chapter or the Constitution of Louisiana.
Exhibit G
The trial court expounded upon its ruling on the Limited Motion for New Trial by stating that Exhibit G was "responsive to the original January 2013 public records request." Exhibit G contains the phrase "501 Elysian Fields project," which was contained in the original public records request. Further, the trial court determined that Exhibit G was "an independent draft different in form and substance from the final draft and it is a public record within the meaning of the statute." We agree. Exhibit G was e-mail correspondence between Commissioner Deveney and Mr. Costello regarding Commissioner Deveney's future statement to the HDLC about his opposition to Mercato's proposed development. Mr. Costello made suggested revisions to Commissioner Deveney's statement.
In Shane , the Louisiana Supreme Court stated that "[c]learly 'electronic mail,' or 'email,' falls within the definition of 'letters,' despite generally lacking a physical form and though usually stored in an electronic format, and, if used in the performance of any work, duty, or function of a public body, under the authority of state or local law, should be deemed a 'public record.' " 14-2225, pp. 10-11, 209 So.3d at 735-36.
Defendants contend that Exhibit G is not a public record because it is only a *1242 draft of Commissioner Deveney's statement to the HDLC. They point out that Commissioner Deveney's official statement to the HDLC concerning his opposition to Mercato's proposed development was initially produced. This argument lacks merit. Exhibit G was not a word processing document that was written over while Commissioner Deveney was preparing his statement. Instead, as in Shane , Exhibit G was prepared, used, and possessed in accordance with Commissioner Deveney's work with the HDLC. As such, Exhibit G was a public record.
Next, we must examine the content of Exhibit G to determine whether "an exception, exemption, or limitation, under the Louisiana Constitution or in the Public Records Law (see LSA-R.S. 44:4.1(A) ), supersedes the right of the public to inspect the record." Shane , 14-2225, p. 16, 209 So.3d at 739. The parties do not contend that Exhibit G belongs to one of the categories of exceptions outlined in La. R.S. 44:4.1.[7] Further, "[t]he assertion that the use of private email correspondence by a public entity should not turn the private communication into a public record overlooks the fact that public entities must regularly use private information in the entities' performance of their business, transactions, work, duties, or functions." Id. , 14-2225, p. 17, 209 So.3d at 739-40. Indeed, Commissioner Deveney utilized private e-mail accounts, as he did not have an HDLC office. We must balance Commissioner Deveney's rights to privacy with the right of the public to inspect public records. Id. , 14-2225, p. 21, 209 So.3d at 742. We find no privacy rights violated in the instant matter, as the only topic covered in Exhibit G was the substance of Commissioner Deveney's future statement to the HDLC.
Custodian of Exhibit G
As we have found that Exhibit G was a public record not entitled to an exception, Commissioner Deveney contends that we must determine who was the legal custodian of Exhibit G. Commissioner Deveney contends that he was not a legal custodian of HDLC records and cannot be held liable in solido with the public body for attorneys' fees in this case.
*1243 "The word 'custodian' is defined by LSA-R.S. 44:1 as 'the public official or head of any public body having custody or control of a public record, or a representative specifically authorized by him to respond to requests to inspect any such public records.' " Shane , 14-2225, p. 26, 209 So.3d at 745, quoting La. R.S. 44:1(A)(3). "Providing access to public records is a responsibility and duty of the appointive or elective office of a custodian and his employees." La. R.S. 44:31(A). The Louisiana Supreme Court stated that "it is clear that 'custody' under this statute may be a mere physical possession, for purposes of determining who may be a custodian of a public record." Shane , 14-2225, p. 26, 209 So.3d at 745. The Supreme Court went on to hold that more than one custodian can exist for one document. Id. , 14-2225, pp. 26-27, 209 So.3d at 745-46 (finding that two groups had custody of the documents and were both custodians). Therefore, the " 'custodian' of a public record may be a public official have either custody (i.e., physical possession) or control of a public record." Id. , 14-2225, p. 28, 209 So.3d at 746.
In the present matter, the trial court has not yet labeled any custodian(s) or assessed an amount of attorney's fees against any Defendants. Therefore, we find a determination of Commissioner Deveney's status as a custodian is premature, as the matter is not before us on appeal. Based on the above, we find that the trial court did not commit manifest error by determining that Exhibit G was a public record. Accordingly, the trial court did not abuse its discretion by granting Mercato's Limited Motion for New Trial.
ENTITLEMENT TO ATTORNEY'S FEES
Defendants aver that the trial court erred by finding that Mercato was entitled to an award of attorney's fees. Defendants contend that they should not be liable for attorney's fees because Mercato did not completely prevail on the Writ of Mandamus and their behavior was not arbitrary, capricious, or unreasonable.
La. R.S. 44:35(D)(1) provides:
D. (1) If a person seeking the right to inspect, copy, or reproduce a record or to receive or obtain a copy or reproduction of a public record prevails in such suit, he shall be awarded reasonable attorney fees and other costs of litigation. If such person prevails in part, the court may in its discretion award him reasonable attorney fees or an appropriate portion thereof.
Further, La. R.S. 44:35(E)(1) states:
If the court finds that the custodian arbitrarily or capriciously withheld the requested record or unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32, it may award the requester any actual damages proven by him to have resulted from the actions of the custodian except as hereinafter provided. In addition, if the court finds that the custodian unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32 it may award the requester civil penalties not to exceed one hundred dollars per day, exclusive of Saturdays, Sundays, and legal public holidays for each such day of such failure to give notification.
While Defendants contend that their state of mind voids the award for attorney's fees, this Court previously addressed the issue with an analysis of legislative intent. This Court held that "[t]he drafters of the statute conditioned an award of actual damages and a civil penalty on a showing of arbitrary or capricious conduct by the custodian." Ferguson v. Stephens , 623 So.2d 711, 716 (La. App. 4th Cir. 1993). Thus, "[i]t is reasonable to assume that if the drafters of the statute intended that an award of attorney's fees under 44:35(D) be conditioned on the custodian's bad faith, that condition likewise *1244 would have been specified in the statute." Id. Further, this Court held that the trial court erred by finding that a party's good faith precluded the award of attorney's fees. Id. Additionally, when examining whether the plaintiff partially or completely prevailed on the suit regarding public records, we stated that "the object of plaintiff's suit was access to the public records." Id. , 623 So.2d at 717. This Court found that the "[p]laintiff completely prevailed as to the object of her suit" and was therefore "entitled to attorney's fees and other litigation costs. Id. See also Innocence Project New Orleans v. New Orleans Police Dep't , 13-0921 (La. App. 4 Cir. 11/6/13), 129 So.3d 668.
We find Ferguson controlling and analogous.[8] Mercato filed the Writ of Mandamus seeking compliance with its public records request. Mercato received documents after beginning litigation on the Writ of Mandamus, including the trial court's order to produce Exhibit G. As such, Mercato, like the plaintiff in Ferguson , "completely prevailed as to the object" of the suit. 623 So.2d at 717. Accordingly, we find that the trial court was required, as provided for in La. R.S. 44:35(D)(1), to award Mercato attorney's fees.[9] The trial court has yet to award an amount of attorney's fees; therefore, the reasonableness of the amount of that award is not before us.
DECREE
For the above-mentioned reasons, we find that Mercato's Limited Motion for New Trial was timely filed because the notice of signing of the judgment was not mailed until January 10, 2017. Further, we find, as the Louisiana Supreme Court did in Shane , that the e-mail between Commissioner Deveney and Mr. Costello was a public record concerning Commissioner Deveney's work at the HDLC. Lastly, we find that Mercato was entitled to an award of attorney's fees as a prevailing party. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED

Notably, "doubt must be resolved in favor of the right to appeal." Penalber v. Blount , 405 So.2d 1376, 1377 (La. App. 1st Cir. 1981).

La. R.S. 44:4.1 provides:
A. The legislature recognizes that it is essential to the operation of a democratic government that the people be made aware of all exceptions, exemptions, and limitations to the laws pertaining to public records. In order to foster the people's awareness, the legislature declares that all exceptions, exemptions, and limitations to the laws pertaining to public records shall be provided for in this Chapter or the Constitution of Louisiana. Any exception, exemption, and limitation to the laws pertaining to public records not provided for in this Chapter or in the Constitution of Louisiana shall have no effect.
B. The legislature further recognizes that there exist exceptions, exemptions, and limitations to the laws pertaining to public records throughout the revised statutes and codes of this state. Therefore, the following exceptions, exemptions, and limitations are hereby continued in effect by incorporation into this Chapter by citation:
(1) R.S. 3:556.10, 559.9, 750, 1401, 1413, 1430.7, 1435, 3204, 3221, 3370, 3421, 3524, 3706, 4021, 4110, 4162
(2) R.S. 6:103, 122, 135, 1308
(3) R.S. 9:172, 224, 313, 331.1, 395, 461, 1033, 3518.1, 3556, 3574.6, 3576.21
(4) R.S. 11:174
(5) R.S. 12:1702
(6) R.S. 13:1905, 2593, 3715.3, 3715.4, 3734, 4687, 5108.1, 5304, 5366(L)
(7) R.S. 14:403, 403.1, 403.5
(8) R.S. 15:242, 440.6, 477.2, 549, 570(F), 574.12, 578.1, 616, 660, 840.1, 1176, 1204.1, 1212.1(E), 1507, 1614
(9) R.S. 17:7.2, 46, 47, 81.9, 391.4, 500.2, 1175, 1202, 1237, 1252, 1952, 1989.7, 2047, 2048.31, 3099, 3100.8, 3136, 3390, 3773, 3884
(10) R.S. 18:43, 44, 114, 116, 154, 1308, 1491.5, 1495.3, 1511.8

Ott v. Clarkson , 03-1287, p. 4 (La. App. 4 Cir. 12/10/03), 863 So.2d 663, 666, as relied upon by Defendants is distinguishable in that this Court found that the defendant voluntarily provided information to the plaintiff; thus making the plaintiff a non-prevailing party.

Defendants rely upon Dwyer v. Early , 02-1545 (La. App. 4th Cir. 3/12/03), 842 So.2d 1124, writ denied , 03-1013 (La. 5/30/03), 845 So.2d 1053, which held that the award of attorney's fees pursuant to La. R.S. 44:35 is discretionary in nature. This Court's opinion in Dwyer is brief and was based on the trial court's reasons for judgment. The trial court relied upon the analysis of a partially prevailing party, as contained in Hunter v. Pennington , 98-1821 (La. App. 4 Cir. 1/20/99), 726 So.2d 1082. Also, the trial court relied upon Times Picayune Pub. Corp. v. New Orleans Aviation Bd. , 99-237 (La. App. 5 Cir. 8/31/99), 742 So.2d 979, which held that the amount of attorney's fees awarded was subject to an abuse of discretion review. While the full facts and circumstances present in Dwyer are unknown, the trial court focused on cases regarding partially prevailing parties and the amount of attorney's fees; neither of which is at issue in the present matter. Therefore, we find Dwyer is inapplicable and distinguishable. The case sub judice concerns a party who completely prevailed and was found to be entitled to attorney's fees with the amount to be determined later.