Judgment rendered April 14, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,852-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CATHERINE J. ESTIS, SAMUEL C.           Appellants
ESTIS AND THUY P. ESTIS
                              versus

CLIFTON L. MILLS, KIMBERLY M.           Appellees
MILLS, TWIN STALKS, INC., COLE
MILLS PLANTING, INC., LITTLE
ANGOLA PAYROLL PARTNERSHIP,
AND CLAK, INC.

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Richland, Louisiana
Trial Court No. 45956

Honorable Will Barham, Judge

* * * * *

BREAZEALE, SACHSE & WILSON, LLP         Counsel for Appellants
By: Steven B. Loeb
    Jacob E. Roussel

COTTON, BOLTON, HOYCHICK &              Counsel for Appellees
DOUGHTY, L.L.P.
By: John B. Hoychick

* * * * *

Before COX, THOMPSON, and ROBINSON, JJ.

**COX, J.**

This suit arises from the Fifth Judicial District Court, Richland Parish, Louisiana. Plaintiffs, Catherine J. Estis, Samuel C. Estis, and Thuy P. Estis, ("the Appellants") brought suit against Clifton and Kimberly Mills ("the Appellees") for the wrongful killing and disposal of the Appellants' German Shepherd. On appeal, the Appellants argue that the district court erred in permitting the Appellees to amend their original answer to now include an affirmative defense of immunity pursuant to La. R.S. 3:2654, which would relieve the Appellees of liability. Further, the Appellants contend that the district court erred in granting the Appellees' motion for summary judgment, asserting that there remain genuine issues of material fact, and notwithstanding liability for the death of the dog, the court erred in dismissing the Appellees' claim for conversion.

## FACTS

The facts of this case originate from an incident previously brought before this Court, which arose out of the shooting, killing, and disposal of the Appellants' ten-month-old German Shepherd. *See*, *Estis v. Mills*, 52, 280 (La. App. 2Cir. 8/14/19) So. 3d 1117. The parties to this case were neighbors whose property was separated by an enclosed pasture in which the Appellees used to house their horses. The Appellees alleged that despite repeated requests to the Appellants to keep their dogs out of their pasture, the dogs would nevertheless enter the pasture and harass their horses and other animals. On August 22, 2017, after Mr. Mills discovered that the Appellants' German Shepherd was in the pasture with his horses, he retrieved his gun and subsequently shot, killed, and disposed of the dog.

After this incident, the Appellants filed suit against the Appellees seeking damages arising from the shooting, killing, and subsequent disposal of the dog's body.  The Appellants alleged that Mr. Mills intentionally shot the dog, failed to disclose this information, and disposed the body in Bayou Lafourche, approximately ten miles away from the Appellants' property.  On June 28, 2018, the Appellees filed a motion for summary judgment, seeking immunity under the provisions of La. R.S. 3:2654.[1]  On December 6, 2018, the district court granted the motion in favor of the Appellees and the initial appeal to this court was filed.  On appeal, the Appellants argued that the Appellees waived the immunity under the statute by failing to affirmatively plead the defense in their answer or any subsequent pleadings.

In response, to this appeal, this Court reversed the trial court and remanded the case, opining that because the immunity had not been affirmatively pled, as required by law, the protections of the immunity statute had been waived because the affirmative defense was not specifically pled in the answer.  After this Court's ruling, the Appellants sought and obtained permission from the district court to amend their answer and affirmatively plead the protections of La. R.S. 3:2654.  The Appellees then filed another motion for summary judgment, asserting that Mr. Mills was entitled to shoot and kill the dog under the protections of the immunity statute and the district court ruled in their favor.  The Appellants now appeal the district court's decision.

---

[1] La. R.S. 3:2654 is an affirmative defense statute, which provides, "Any person finding any dog not on the premises of its owner, harborer, or possessor, which is harassing, wounding, or killing livestock, may, at the time of finding the dog, kill him, and the owners shall not be able to sustain any action for damages against the person killing the dog."

3

**DISCUSSION**

*Amendment of Pleadings*

In their first assignment of error, the Appellants contend that the Appellees' amended answer was erroneously granted because this Court previously determined that the Appellants waived the affirmative defense under La. R.S. 3:2654 by failing to plead it in their original answer. In particular, the Appellants argue that appellate court decisions remain the governing law over a case upon remand to the district court. In support of this assertion, the Appellants cite *1205 St. Charles Condo. Assoc. Inc. v. Abel*, 2018-0566 (La. App. 4 Cir. 12/19/18), 262 So. 3d 919, 927, in which the court found that an appellate "court's disposition on [an] issue considered becomes the 'law of the case,' foreclosing re-litigation of that issue either in the trial court on remand or in the appellate court on a later appeal." *Id.*

The Appellants contend that the purpose of the "law of the case doctrine is to avoid re-litigation of the same issue," *State ex rel. Div. of Admin., Office of Risk Mgmt. v. Nat'l Union Fire Ins. Co. of La.*, 2013-0375 (La. App. 1 Cir. 1/8/14), 146 So. 3d 556, and the "policy applies to parties who were parties to the case when the former decision was rendered and who thus had their day in court." *State v. Mark*, 2013-1110 (La. App. 4 Cir. 7/30/14), 146 So. 3d 886, 898 writ denied14-1851 (La. 4/10/15), 163 So. 3d 807. It is therefore the Appellees' position that the "law of the case principle relates to . . . the conclusive effects of appellate rulings at trial on remand,*"* *Mercato Elisio, L.L.C. v. City of New Orleans*, 2018-0081 (La. App. 4 Cir.

11/21/18), 259 So. 3d 1235, 1240, and any further proceedings must, therefore, align with the decision rendered by the appellate court.

The Appellants rely on this Court's previous decision in *Estis, supra,* which held that "[i]mmunity is an affirmative defense that must be specifically ple[d] by a defendant or it is deemed waived," and because the Appellants "failed to affirmatively plead La. R.S. 3:2654, those protections are waived." *Id.* This ruling was to be "remanded for further proceedings consistent with this opinion." *Id.* From this decision, the Appellants assert that this Court found that the Appellees were barred from the ability to subsequently assert the affirmative defense in all future proceedings in this case. We disagree with the Appellees' interpretation of this holding.

The law of the case doctrine is a discretionary guide that relates to the binding force of a trial judge's ruling during the later stages of trial, the conclusive effects of appellate rulings at trial on remand, and the rule that an appellate court ordinally will not reconsider its own rulings of law on a subsequent appeal in the same case. *Welch v. Willis-Knighton Pierremont,* 44,554 (La. App. 2 Cir. 11/7/10) 56 So. 3d 242, *writs denied*, 11-0075, -0109 (La. 2/25/11), 58 So. 3d 457, 459. It applies to all prior rulings or decisions of an appellate court or supreme court in the same case, not merely those which arise from the full appeal. *Id; See, Lowe v. Lowe,* 244 So. 3d 670 (La. App. 2 Cir. 9/27/17).

Although the Appellees correctly noted that the law of the case doctrine, as it applies to the present case, concerns the conclusive effects of appellate rulings at trial on remand such that any further proceedings must align with the decision rendered by the appellate court, we note that the doctrine is not an inflexible law. However, the assumption that once an

5

appellate court issues its decision in a case and makes conclusions of law, its instructions, on remand, continue in accordance with those instructions in all subsequent proceedings in the same case, is not always an absolute. For example, with respect to amendments, the law takes a liberal approach in allowing pleadings to be amended to promote the interests of justice. *Reeder v. North*, 97-0239 (La. 10/21/97), 701 So. 2d 1291.

Trial courts have broad discretion in determining whether to allow amendment to pleadings. Thus, a trial court's ruling on an issue will not be reversed absent an abuse of that discretion. *Coleman v. Lowery Carnival Co.*, 295 So. 3d 427 (La. App. 2 Cir. 4/22/20), *writ denied*, 20-00594 (La. 9/23/20), 301 So. 2d 1129. Amendments of pleadings are generally allowed, provided the mover is acting in good faith, the amendment is not sought as a delaying tactic, the opponent will not be unduly prejudiced and trial of the issues will not be unduly delayed. *Id.* at 13. The decision to allow an amendment is within the trial court's broad discretion. *Id.*

First, we resolve any potential ambiguity with the interpretation of this Court's last rendered opinion associated with this case. In *Estis, supra,* this Court determined that La. R.S. 3:2654 is an affirmative defense and must therefore be pled in the affirmative, otherwise its protections are waived. At the time of the original appeal, the Appellees failed to satisfy this requirement; therefore, this Court concluded that the immunity defense was waived limited to the pleadings brought before the Court at that time. This Court then stated that the case should be "remanded for further proceedings consistent with th[e] opinion," to which the Appellees assert relates to the dismissal of the protections under the immunity statute in future proceedings.

6

To this, we clarify that the Appellees only waived their immunity under La. R.S. 3:2654 at the time the original appeal was made because the pleadings making up the original appeal failed to affirmatively plead the protections of the statute. We are not of the opinion that the Appellees forever lost the ability to subsequently assert the defense at a later time; rather they only lost the right at the time of the former appeal. This Court's instruction that the case should be remanded on appeal in a manner consistent with the opinion relates not to the waiver of the affirmative defense; instead, it was directed toward the genuine issues of material fact that remained as a result of the waiver, which was to be addressed at trial.

Second, we acknowledge that on remand, the trial court retained full discretion to permit the amendment of any pleadings properly brought before it. As previously stated, the trial court's decision on such a matter will not be reversed absent an abuse of that discretion. In this case, we note the following in finding no abuse of discretion in granting the Appellee's motion to amend their answer: (1) there was no evidence that the Appellees sought to amend their answer in bad faith or for the purpose of achieving a delay of the proceedings because the original pleading included a defense which related to the harassment of the horses; moreover, the answer was timely filed; and, (2) the Appellants did not allege or show that they were prejudiced by the amended answer; although the Appellants contend that the immunity defense was waived in its entirety for the Appellees, such that it could not be pled at a later time, we conclude that this reliance is misplaced based on the above cited clarification as noted in the previous cases.

We place particular importance on the previously rendered opinion to this case because it was not intended to deprive the trial court of the

7

autonomy to allow any subsequent pleadings to be amended on remand. For this reason, we find that the Appellees properly sought to amend their pleadings, the trial court retained the discretion to grant the amendment, and the trial court properly found that the protections of the immunity statute were available given the particular facts of this case.

*Summary Judgment*

In their second assignment of error, the Appellants argue that the district court erred in granting the motion for summary judgment because genuine issues of material fact existed as to whether the dog actually harassed the Appellees' horses and the true motivation for the killing of Appellants' dog.

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Coleman, supra* at 3. Appellate review of the summary judgment is *de novo*, and the appellate court must use the same criteria that govern the district court's determination of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. *Id.*; La. C.C. P. art. 966 A(3).

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there are no genuine issues as to material fact, and that the mover is entitled to judgment as a matter of law pursuant to La. C.C.P. art 966(A)(3). *Id.* A fact is deemed material if it "potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Id.* A genuine issue of material fact is a triable issue on which reasonable persons

could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Id.* In determining whether an issue is genuine, a court cannot make credibility determinations, should not consider the merits, evaluate testimony, or weigh evidence. *Id. see also*, *Watkins v. City of Shreveport,* 32 So. 3d 346 (La. App. 2 Cir. 3/3/10). Rather, the court must draw those inferences from the undisputed facts most favorable to the opposing party. *Id.*

In support of their argument that the district court erred in granting the motion for summary judgment, the Appellants submitted a photograph depicting the Appellees' horses with the dog, coupled with the deposition testimony of Mr. Ed Dabney, an expert in equine behavior. According to Mr. Dabney's assessment of the picture, which depicts the horses casually grazing with their backs towards the dog, the horses were not, at that moment, being harassed by the dog. Mr. Dabney opined that "the depiction of the horses in the photograph reveals that [the] horses did not consider the presence of the dog to be a danger or hazard, nor does the depiction of the horses reflect that the horses are being harassed," because the mare's back was turned towards the dog, despite their tendency to be extremely protective of their young. In particular, Mr. Dabney explained:

. . .

5. In his deposition, Clifton Mills explained that the two horses in the photograph are a mare and its colt. This is consistent with my observation of the photograph.

6. In the photograph, the mare horse, which is standing directly next to the colt, is grazing with its back turned to the dog. Neither horse is in a defensive posture nor does either horse appear as attempting to elude the dog.

7. Mares are extremely protective of their colts. If either horse felt threatened in any manner by the presence of the dog, the

9

mare would not be grazing next to its colt with its back turned to the dog. Rather, the depiction of the horses in the photograph reveals that horses did not consider the presence of the dog to be a danger or hazard nor does the depiction of the horses reflect that the horses are being harassed.

8. Based upon my education and experience in the area of equine behavior as well as the photograph and other documents reviewed, it is my professional opinion that Plaintiff's dog was not harassing, wounding, or killing Defendant's horses.

Given the photographic evidence and expert testimony regarding the horses' casual indifference toward the dog, the Appellants argue that a reasonable jury could have concluded that the dog was not a threat to the horses. In opposition, the Appellees argue that the picture is merely a snapshot of time taken in less than a second and does not accurately reveal the events which led up to or after the picture was taken. The Appellees contend that Mr. Dabney could not accurately determine, based on the picture alone, what occurred before or immediately after the picture was taken because he was not present when the incident occurred. The Appellees acknowledge that although personal knowledge is not required in an expert's affidavit in the context of summary judgment, La. C. E. art. 702 does require that the expert's testimony be based on sufficient facts, and in the present case, the Appellees argue that the photograph alone is insufficient for Mr. Dabney to opine upon.

Instead, the Appellees assert that the testimony of Mr. Mark Brown, an independent eye-witness to the incident, coupled with Mr. Mills' testimony of the incident sufficiently determined that the dog harassed the horses. According to Mr. Brown, he observed the Appellants' dog harass the Appellees' horses for several minutes and because he believed that the situation was serious, reported the incident to Mr. Mills. Mr. Mills then

testified that he later witnessed the horses running because of the dog, but then they stopped to graze.  After the horses stopped to graze, the dog continued to harass the colt, who appeared to be more anxious about the dog.  We agree with the Appellees that the photograph is only evidence of a singular moment in time and circumstances are subject to change.  However, we find that the trial court made a credibility determination and weighed the evidence.

Generally, credibility determinations are made by the trier of fact; however, the trial court does retain some flexibility to make limited credibility determinations.  Such determinations are narrowed to whether there is a possibility that the factfinder could reach different outcomes at trial on a particular issue.  However, on a motion for summary judgment, the court is prohibited from making credibility determinations or deciding between competing versions of the same event.  *Coleman, supra.*  Notably, the district court evaluated the weight of this evidence on its own accord, stating that:

> The picture insofar as we do take into consideration what I
> believe to be relevant in the expert's opinion, the picture we
> can't- I mean it wasn't a video, it was a still frame and I think
> you could probably take a still frame video-I mean photograph
> of just about any altercation or fight and they could look like-
> you know, you could-you could capture at that one point their-
> you know, didn't have the body language or posture that
> ordinarily would-so I don't-I don't want anyone to think that I
> put too much stock into the photo although I did study the
> photo very closely to look at it, I did and I will take into
> consideration-not only the age o[f] the dog but the fact that the
> other dog did-the older dog did run away from the scene as
> well. . . The fact that Mr. Mark Brown was involved in the
> middle of the morning to begin with would indicate to me that
> this was nothing not new issue. . . It seems-it just seems like a
> lot of effort to go to for a dog and horse sitting there peacefully
> you know, not having any kind of altercation of any sort so-
> So, with regard to the issue of whether or not he is covered, I do
> find that the defendant has carried his burden. . .

11

Issues of credibility have no place in summary judgment procedure. It is not the court's function on a motion for summary judgement to determine or even inquire into the merits of the issues presented. *Ouachita Nat. Bank in Monroe v. Gulf States Land & Dev., Inc.*, 579 So. 2d 1115 (La. App. 2 Cir. 5/8/91), *writ denied*, 587 So. 2d 695 (1991). In the present case, the district court was ultimately presented with two conflicting sources of evidence: the photograph and opinion of Mr. Dabney, and the testimony of both Mr. Brown and Mr. Mills. Based upon the testimony of Appellees, it can be concluded that the picture is merely a snapshot of time taken in less than a second and does not accurately reveal the events which led up to or after the picture was taken. However, it may be equally plausible that the photograph, coupled with the testimony of Mr. Dabney, could support a ruling that the actions of the dog did not constitute harassment given the circumstances.

Whether one source of evidence is more plausible or credible than the other is neither within this Court's discretion to determine, nor does it fall within the purview of the district court. Any such determination as to credibility is improper on a motion for summary judgment. Similarly, the Appellees' contention that the Appellants had an ulterior motive for killing the dog is a credibility determination which concerns subjective facts and must be determined by a trier of fact, which is not appropriate for the disposition of a case on a motion for summary judgment. *ACMG of La., Inc., v. Jones*, 35,102 (La. App. 2 Cir. 9/26/01), 796 so. 2d 704, *writ denied*, 01-2869 (La. 1/10/02), 807 So. 2d 240.

Therefore, the district court's conclusion that the Appellees satisfied their burden based on the testimony presented, requires the weighing of evidence and the making of credibility determinations which is inappropriate in the context of a motion for summary judgment. Thus, the trial court erred in granting the motion.

*Conversion*

This Court notes that a history of animosity has existed between these two parties. During the time they have lived as neighbors, there have been several incidents between them, which include physical altercations and property disputes, the result of which has unfortunately culminated in the death of a family pet.

While there is no formal definition of conversion in the Louisiana Civil Code, our state establishes the foundation for all torts in La. C.C. art. 2315, which states that, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." In Louisiana, conversion is an intentional tort which consists of an act in derogation of the plaintiff's possessory rights. *Boyer v. Kokkinis*, 51, 598 (La. App. 2 Cir. 9/27/17), 244 So. 3d 652, writ denied, 17-2058 (La. 2/2/18), 235 So. 3d 1112. Conversion is committed when a distinct act of dominion is wrongfully exerted over the property of another in denial of or inconsistent with the owner's rights therein. *Id.* Any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time is, a conversion. *Id.* Even if a defendant may have rightfully come into possession of another's goods, the subsequent refusal to surrender the goods to one who is entitled to them may constitute conversion. *Id.; See also*; *Louisiana State Bar Ass'n v. Hinrichs*,

13

486 So.2d 116 (La. 1986). Moreover, the destruction of another's goods by a positive and tortious act is considered a conversion. *Id.*

In the present case, the Appellants argue that irrespective of the court's finding of liability, they maintain a claim for conversion as a direct result of the disposal of the body of the dog into the bayou. The Appellants argue that although La. R.S. 3:2654 shields liability for the *killing* of an animal which harasses livestock, the statute is silent regarding any conduct beyond the act of killing, and therefore, does not authorize an individual to subsequently acquire possession of the animal's body once it is dead. In this case, the Appellants contend that the dog's body is a corporeal movable which belongs to them as owners of the dog. *See*, La. R.S. 3:2773(A).[2] Further, because dogs have been recognized as personal property, it is given the same guarantees of law as any other personal property, *State v. Chambers*, 194 La. 1042, 1045, 195 So. 532, 533 (1940).

In contrast, the Appellees contend that no cause of action can be sustained against them which arises from the killing of the dog. The Appellees argue that under the immunity statute, La. R.S. 3:2654, the owner of the animal is unable to sustain any action for damages against the person who killed the animal in question. In this case, the Appellees argue that the conversion claim is a direct result of the killing and shooting of the dog, for which they cannot be found liable in this context under the protection of the statute. The Appellees argue that regardless of the manner in which the dog's body was disposed, they should have immunity to any subsequent

---

[2] La. R.S. 3:2773(A) provides that, "[d]ogs owned by citizens of this state and by citizens of other states and situated and located in this state are declared to be personal property of such citizens."

14

action concerning the deceased body of the dog and the disposal of the body should fall within those same provision under the immunity statute. As such, any action would be prohibited.

If the court finds that the killing of the dog falls under La. R.S. 3:2654, then the claim for conversion of the dog's body does not survive. However, if there were personal items on the dog at the time of the killing, such as a tracking collar or items of other value, then a conversion claim can be made for those items. If the court determines that the immunity statute does not apply, then the claim for conversion and any other applicable damages may apply.

## CONCLUSION

For the aforementioned reasons, the trial court's judgment is affirmed in granting the motion to amend the pleadings and the assertion of La. R.S. 3:2654 as an affirmative defense of immunity; the judgment granting the motion for summary judgment in favor of the defendants is reversed; and the judgment with respect to the dismissal of the Appellees' claims for conversion is reversed and remanded for further proceedings consistent with this opinion. Costs associated with this appeal are assessed to both parties.

**AFFIRMED** in part; **REVERSED** in part; and **REMANDED**.