EVAN PLAUCHE        *       NO. 2024-CA-0576

VERSUS               *

                      COURT OF APPEAL

THE CITY OF NEW ORLEANS    *

AND TAMMIE JACKSON           FOURTH CIRCUIT

                  *

                      STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2024-04236, DIVISION "E"
Honorable Omar Mason, Judge
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Paula A. Brown, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

Edward R. Washington, III
THE WASHINGTON LAW GROUP, LLC
7130 East Renaissance Court
New Orleans, LA 70128


      COUNSEL FOR PLAINTIFF/APPELLANT


Donesia D. Turner
CITY ATTORNEY
Corwin M. St. Raymond
Kevin C. Hill
Sherri L. Hutton
ASSISTANT CITY ATTORNEYS
CITY OF NEW ORLEANS
1300 Perdido Street, Room 5E03
New Orleans, LA 70112


      COUNSEL FOR DEFENDANT/APPELLEE

                 **VACATED AND REMANDED**

                   **MAY 12, 2025**

This is a dispute over short-term rental zoning ordinances. Appellant, Evan Plauche ("Mr. Plauche"), seeks to appeal the district court's July 9, 2024 judgment, which denied his petition for writ of mandamus and preliminary injunction. For the reasons that follow, we vacate the district court's judgment as to the preliminary injunction and remand the matter for further proceedings consistent with this opinion.

**FACTUAL AND PROCEDURAL HISTORY**

In 2015, Appellee, the City of New Orleans (the "City"), through its City Council (the "Council"), directed the City Planning Commission to undertake a study exploring the implementation and regulation of short-term rentals ("STR") in the City. Pursuant to this study, STRs became permissible through enactments contained in the Municipal Code of New Orleans (the "City Code") and the Comprehensive Zoning Ordinance ("CZO"), with an effective date of April 1, 2017. Prior to this, rentals in residential neighborhoods were not allowed for fewer than thirty days in the City or sixty days in the Vieux Carré (more commonly known as the French Quarter). The CZO defines STRs as:

1

> The use and enjoyment by guests of a Dwelling Unit, or any portion thereof, for a period of less than thirty (30) consecutive days, in exchange for money, commodities, fruits, services, or other performances. Hotels, motels, bed and breakfasts, and other land uses explicitly defined and regulated in the CZO separately from [STRs] are not considered to be [STRs].

A Dwelling Unit is defined as:

> A room, or group of rooms, providing complete, independent living facilities, including permanent provisions for living, sleeping, eating, cooking and sanitation for one or more persons.[1]

As explained by the New Orleans Short Term Rental Administration ("STRA"), "[t]his means that STR guests must have access to cooking and eating facilities. If the STR is within a single[-]family home, the STR guests must have their own bedroom facilities and must have access to the living, kitchen, and bathroom spaces of the home."[2]

After growing concerns were raised about the effects the new STRs were having on residential neighborhoods, the Council ordered another study, which was commenced and completed in 2018.[3] In response to this study, a new licensing regime was adopted and became effective on December 1, 2019. The 2019 STR ordinances were challenged in federal court, and on August 22, 2022, the U.S. Fifth Circuit Court of Appeals issued a judgment finding that the that the then-current licensing regulations that necessitated a homestead exemption, i.e., a

---

[1] For both definitions, *see* https://czo.nola.gov/article-26/. *See also Breston v. DH Catering, LLC*, 23-0460, 0461, p. 2 (La. App. 4 Cir. 2/5/24), 384 So.3d 953, 956, n.2 (where this Court, quoting *Vescovo v. Air & Liquid Sys. Corp.*, 23-0116, p. 10 (La. App. 4 Cir. 11/15/23), 377 So.3d 759, 768, n.7, reiterated that "[t]his Court can take judicial notice of government websites").

[2] *See Overview of Short Term Rentals in New Orleans*, NOLA.GOV (last updated Mar. 18, 2024, 10:59 AM), https://nola.gov/next/short-term-rental-administration/topics/overview-of-short-term-rentals-in-new-orleans/.

[3] *See Short Term Rental Study – 2018 Ed*., NOLA.GOV (Sept. 18, 2018), https://www.nola.gov/nola/media/City-Planning/Preliminary-STR-Study-9-18-18_1.pdf.

residency requirement, for residential property owners with STR licenses, were violative of the Dormant Commerce Clause and, thus, unconstitutional. *See Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 326 (5th Cir. 2022).[4] As a result, the Council responded by creating an interim zoning district,[5] which precluded the issuance of any new STR licenses. Following, the City published a memo on November 4, 2022, which would allow existing STR permit holders to apply for licenses as a legally nonconforming use, provided certain benchmarks were met.[6]

In early 2023, the City enacted additional changes to the STR licensing scheme via ordinances 29381, 29382, and 29398 (collectively, the "2023 Ordinances"). Ordinance 29381, which amended and ordained portions of the City Code, limited property owners to one STR permit each and, in tandem with

---

[4] The *Hignell-Stark* Court reasoned that "[t]he City's residency requirement discriminates against interstate commerce. A law is discriminatory when it produces 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" 46 F.4th at 326 (citations omitted). Furthermore, "[a] law may discriminate on its face, in purpose, or in effect." *Id.* (citations omitted). "But the only form of discrimination that implicates the [D]ormant Commerce Clause is discrimination between 'substantially similar entities.'" *Id.* (citation omitted). "The upshot [of the residency requirement] is that only residents of the City may enter the market for STRs in residential neighborhoods." *Id.* "Residents and out-of-state property owners are . . . 'substantially similar.'" *Id.* (citation omitted).

[5] Comprehensive Zoning Ordinance Article 19, § 19.2(A) defines "interim zoning district" as "[e]mergency zoning regulations that are temporarily imposed while the City reviews existing zoning ordinances for appropriate revisions to protect the public health, safety or welfare."

[6] The memo provided that:

> [U]ses will be presumed to be legally nonconforming if all of the following criteria are met:
>
> a. The dwelling unit was properly licensed as a residential short-term rental before August 29, 2022, the date of M-22-382, which first prohibited the use;
>
> b. All dwelling units used as residential short-term rentals have maintained valid RSTR licenses since before August 29, 2022, or, if there has been any lapse in licensure, the lapse lasted no longer than 180 days; and
>
> c. There are no outstanding STR violations for any STR use located on the lot.

Ordinance 29382, established a lottery system to award an STR license when multiple property owners in the same block wished to obtain a license. Ordinance 29382, which amended and modified STR regulations in the CZO, limited STRs to one per block, but provided a process for an owner to apply for a special exception to that limitation. These two ordinances had an effective date of July 1, 2023. Ordinance 29398, which became effective in April 2023, set all existing STR licenses to expire on August 31, 2023.

At all times pertinent to the case *sub judice*, Mr. Plauche has been the record owner of 4221 Prytania Street, New Orleans, Louisiana 70115, a dwelling comprised of four separate units. The units are designated as 1A, 1B, 2A and 2B. Following the 2019 STR ordinance revisions, Mr. Plauche applied for and was awarded STR licenses for units 1B, 2A and 2B. These licenses were issued on May 11, 2022, and had an expiration date of May 10, 2023. When Mr. Plauche applied for those licenses, two types of STR licenses existed—Type R (Residential) License and Type C (Commercial).[7] The STR license, pursuant to City Code Article IX, Divisions 2 and 3 (specifically, §§ 26-617 and 26-619), is comprised of separate owner and operator licenses were (and still are) required.[8]

---

[7] The residential licenses were further broken down into sub-categories: Short-Term Rental, Small Residential (RSTR-Small); Short-Term Rental Large Residential (RSTR-Large); and Short-Term Rental, Partial Unit Residential (RSTR-Partial). https://library.municode.com/la/new_orleans/codes/code_of_ordinances/402435?nodeId=PTIICO_CH26BUBUREHOST_ARTXISTSHRMRE_DIV1INGE_S26-616SHRMREPEFE

[8] There is also a requirement that any platform that advertises short-term rentals in New Orleans—e.g., Airbnb—is obligated to have a permit. *See* City Code Article XI, Division 4. https://library.municode.com/la/new_orleans/codes/code_of_ordinances?nodeId=PTIICO_CH26BUBUREHOST_ARTXISTSHRMRE_DIV4SHRMREPLPE.

4

After the 2023 Ordinances became effective, only two general types of STR licenses remained—Type N (Non-Commercial) and Type C (Commercial).[9]

On May 10, 2024, Mr. Plauche filed a *Petition for Writ of Mandamus, Mandatory Injunction, Preliminary Injunction, Permanent Injunction, and Declaratory Judgment* (the "Petition").[10]  In the Petition and accompanying affidavit, Mr. Plauche averred that after the STR licenses for units 1B, 2A and 2B expired on May 10, 2023, he reapplied for and was granted new licenses for each as legally nonconforming use by virtue of the November 4, 2022 memo.  These licenses became effective on May 19, 2023, and were all facially set to expire on August 31, 2023.  According to the Petition, on August 14, 2023, Mr. Plauche won the lottery for his block for the renewal of the STR license associated with unit 2B. He further asserts that the City informed him on August 31, 2023, that he would not be allowed to apply for renewal of the licenses associated with units 1B and 2A.  On September 1, 2023, the federal district court granted a preliminary injunction that restrained the City from enforcing any of the 2023 Ordinances until a judicial determination about their constitutionality had been reached.  *See Hignell*

---

[9] *See* https://library.municode.com/la/new_orleans/codes/code_of_ordinances?nodeId=PTIICO_CH26BUBUREHOST_ARTXISTSHRMRE_DIV1INGE_S26-615SHRMREPERE.

[10] Notably, the City did not file an answer to the Petition.  However, because the hearing was set pursuant to a "show cause" order, it was conducted as a summary proceeding, which does not require an answer.  See La. C.C.P. art. 2593, which provides, in pertinent part:

> A summary proceeding may be commenced by the filing of a contradictory motion or by a rule to show cause, except as otherwise provided by law.
>
> Exceptions to a contradictory motion, rule to show cause, opposition, or petition in a summary proceeding shall be filed prior to the time assigned for, and shall be disposed of at, the trial. An answer is not required, except as otherwise provided by law.

*See also R&R Contracting & Dev. Co., Inc. v. City of Baton Rouge Through City Council*, 413 So.2d 596, 599 (La. App. 1st Cir. 1982), (wherein the appellate court explained the city was "ordered to respond to a 'show cause' order for the issuance of a preliminary injunction. In such a summary proceeding, no answer is required.")

*v. City of New Orleans*, 19-13773 c/w 22-2991, 2023 WL 5751132, at *1 (E.D. La. Sept. 6, 2023). Ultimately, the injunction was lifted on February 28, 2024, wherein the federal district court found that the 2023 Ordinances passed constitutional muster. *See Hignell v. City of New Orleans*, 19-13773 c/w 22-2991, 23-5000, 2024 WL 838217 (E.D. La. Feb. 28, 2024). Mr. Plauche asserts in the Petition that shortly thereafter, on March 8, 2024, the City again refused to renew his STR licenses related to units 1B and 2A. More pointedly, in his affidavit attached to the Petition, Mr. Plauche alleges that the City's Department of Safety and Permits informed him that they would not be accepting his applications for renewal for those two units, and that the only nonconforming use licenses that would be issued were for Commercial STRs.

Following a hearing, on July 9, 2024, the district court denied the Petition as it related to the writ of mandamus and the preliminary injunction. The following day Mr. Plauche filed a motion and order for new trial. Mr. Plauche then filed a motion for devolutive appeal on July 18, 2024, which was signed by the district court on July 25, 2024.

**PRELIMINARY MATTERS**

*Jurisdiction*

"Before considering the merits of any appeal, an appellate court has 'the duty to determine *sua sponte* whether [proper] jurisdiction exists, even when the parties do not raise the issue.'" *Brown v. Brown*, 23-0132, 0133, p. 4 (La. App. 4 Cir. 10/3/23), 382 So.3d 899, 901 (quoting *Succession of Hickman*, 22-0730, p. 5 (La. App. 4 Cir. 3/15/23), 359 So.3d 584, 589).

After reviewing the record, we found that Mr. Plauche filed a motion and order for new trial on July 10, 2024, which was signed by the district court, setting

6

a hearing date of August 29, 2024. His memorandum in support of this motion addressed both the request for a preliminary injunction and the writ of mandamus. Further review revealed that the appellate record contains neither a judgment nor a hearing transcript related to that motion and order. As a result, on January 16, 2025, this Court issued an order to the Clerk of the Civil District Court to supplement the record with a copy of the judgment on the motion for new trial and the August 29, 2024 transcript. Counsel for Mr. Plauche provided correspondence to explain that neither of those documents existed because the hearing was continued without date and was never held. Following, the court reporter for this matter provided the Court with documentation, which corroborated that the August 29, 2024 hearing had been continued and did not appear to have been set for another date.

On January 27, 2025, this Court issued a second order, directing Mr. Plauche to show cause, in writing, why this Court has jurisdiction over the instant appeal. We referenced La. C.C.P. art. 2087(D), which provides that:

> An order of appeal is premature if granted before the court disposes of all timely filed motions for new trial or judgment notwithstanding the verdict. The order becomes effective upon the denial of such motions.

Pursuant to this order, counsel for Mr. Plauche furnished a letter, in which he cited to the appellate court's decision in *Stevens v. St. Tammany Parish Government*, 16-0197, p. 6 (La. App. 1 Cir. 1/18/17), 212 So.3d 562, 566. The *Stevens* Court explained that because the denial of a preliminary injunction is interlocutory in nature, the aggrieved party has no right to move for a new trial. Thus, Mr. Plauche asserted that because he chose not to continue to pursue the motion for new trial, his appeal is properly before this Court for review. We agree.

7

Louisiana Code of Civil Procedure Article 1841 explains that "[a] judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment." Furthermore, "[a]n interlocutory judgment is appealable only when expressly provided by law." La. C.C.P. art. 2083(C). This Court has previously recognized that, although the denial of a request for preliminary injunction is interlocutory in nature, pursuant to La. C.C.P. art. 3612,[11] the judgment is an appealable judgment by right if the appeal is filed within fifteen days of the ruling denying that request. *See, e.g.*, *Deepwater Prop. Mgmt. LLC v. Citywide Dev. Servs., L.L.C.*, 23-0612, p. 3 (La. App. 4 Cir. 3/15/24) 385 So.3d 727, 730 n.1. In this instance, the judgment denying Mr. Plauche's Petition was rendered on July 9, 2024, and the motion for devolutive appeal was filed within 15 days of the judgment on July 18, 2024; thus, the appeal on the preliminary injunction is timely filed and jurisdiction is vested with this Court.

Notably, the letter from Mr. Plauche's counsel did not broach the issue of a motion for new trial as it related to the writ of mandamus. The City points out in its brief to this Court that Mr. Plauche's motion and order for devolutive appeal were limited to requesting review of the denial of the preliminary injunction. For that reason, it asserts that the denial of the writ of mandamus is not before us. In his brief to this Court, Mr. Plauche agrees that the instant appeal emanates solely

---

[11] Louisiana Code of Civil Procedure article 3612 provides, in pertinent part:

> B. An appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction, but such an order or judgment shall not be suspended during the pendency of an appeal unless the court in its discretion so orders.

> C. An appeal from an order or judgment relating to a preliminary injunction must be taken, and any bond required must be furnished, within fifteen days from the date of the order or judgment. The court in its discretion may stay further proceedings until the appeal has been decided.

8

from the denial of the request for preliminary injunction. Counsel for Mr. Plauche conceded as much when questioned at oral argument by this Court. Accordingly, the only issue before us is the district court's denial of the preliminary injunction.[12]

## STANDARD OF REVIEW

This Court's jurisprudence has long held that, generally, "[a]n appellate court reviews a [district] court's decision on the grant or denial of a preliminary injunction under the abuse of discretion standard of review." *Deepwater*, 23-0612, p. 3, 385 So.3d at 730. *See also Waiters v. deVille*, 20-0556, 0324, p. 8 (La. App. 4 Cir. 12/30/20), 365 So.3d 544, 551-52 (citation omitted). Nevertheless, "[t]hat broad standard is, of course, based upon a conclusion that the [district] court 'committed no error of law and was not manifestly erroneous or clearly wrong in making a factual finding that was necessary to the proper exercise of its discretion.'" *Meredith v. I Am Music, LLC*, 18-0659, p. 4 (La. App. 4 Cir. 2/13/19), 265 So.3d 1143, 1145-46 (quoting *Rand v. City of New Orleans*, 12-0348, pp. 3-4 (La. App. 4 Cir. 12/13/12), 125 So.3d 476, 479). "[W]here errors of law are involved, the appropriate standard of review is *de novo*." *Id.* at p. 4, 265 So.3d at 1146 (quoting *Vieux Carre Comm'n Found. v. City of New Orleans*, 17-0527, p. 8 (La. App. 4 Cir. 1/31/18), 317 So.3d 345, 350).

Based upon the following discussion, we find the district court committed legal error when it considered Mr. Plauche's motion for preliminary injunction to

---

[12] We note, however, that it appears the motion for new trial pertaining to the writ of mandamus is still a viable pleading pending before the district court. Similar to the denial of a preliminary injunction, "[t]he denial of a request for a writ of mandamus is likewise an appealable judgment." *Coxe Prop. Mgmt. & Leasing v. City of New Orleans*, 19-0911, p. 13 (La. App. 4 Cir. 4/8/20), 294 So.3d 1098, 1107 (alteration in original) (quoting *Constr. Diva, L.L.C. v. New Orleans Aviation Bd.*, 16-0566, p. 2 (La. App. 4 Cir. 12/14/16), 206 So.3d 1029, 1032). In contrast to the denial of a preliminary injunction, however, the denial of a writ of mandamus may be challenged by a motion for new trial. *See, e.g., Mercato Elisio, L.L.C. v. City of New Orleans*, 18-0081 (La. App. 4 Cir. 11/21/18), 259 So.3d 1235.

be prohibitory rather than mandatory. Consequently, our review of the case *sub judice* will be conducted *de novo*.

## DISCUSSION

Mr. Plauche offered three assignments of error for our review. However, because our determination in this case hinges solely on a procedural issue pertaining to injunctive relief, we will not address the merits of any assignments of error raised by Mr. Plauche in his brief to this Court.[13]

*Preliminary Injunction*

This Court has previously expounded that "[a] preliminary injunction is an interlocutory procedural device designed to preserve the existing status quo between the parties, pending trial on the main demand." *Randazzo v. Imbraguglio*, 21-0679, p. 12 (La. App. 4 Cir. 5/25/22), 343 So.3d 852, 861 (quoting *Ard v. GrrlSpot, LLC*, 19-0312, 0335, p. 14 (La. App. 4 Cir. 10/23/19), 364 So.3d 358, 366). "Preliminary injunctions can be prohibitory or mandatory." *Id.* (citing *Ard*, 19-0312, 0335, p. 14, 364 So.3d at 367). "A mandatory injunction orders the doing of something, while a prohibitory injunction seeks to restrain conduct." *Deepwater*, 23-0612, p. 4, 385 So.3d at 731 (citing *Ard,* 19-0312, 0335, pp. 14-15, 364 So.3d at 367). "If the mover seeks a prohibitory preliminary injunction, the mover must make a *prima facie* showing; yet if the mover seeks a mandatory preliminary injunction, the mover must demonstrate the elements by a

---

[13] 1.  The district court erred by depriving Mr. Plauche of his vested property interest in his STR business by denying his nonconforming use status.

   2.  The district court erred by allowing invalid and void ordinances 29381 and 29382 to deprive Mr. Plauche of his vested property interest in his STR business.

   3.  The district court erred by allowing invalid and void ordinance 29398 to deprive Mr. Plauche of his vested property interest in his STR business without due process of law under the state and federal constitutions.

preponderance of the evidence at an evidentiary hearing." *Randazzo*, 21-0679, p. 13, 343 So.3d at 862 (citing *Mercadel v. New Orleans Jazz & Heritage Festival & Found., Inc.*, 22-0242, pp. 9-10 (La. App. 4 Cir. 4/20/22), 338 So.3d 589, 597).

In his pleadings and in argument before the district court and in briefs to this Court Mr. Plauche asserts that he is seeking a prohibitory preliminary injunction to preserve the status quo and to enjoin the City from the enforcement of the 2023 Ordinances, which interfere with his vested property rights in relation to units 1B and 2A. However, inclusive in the Petition is a request for a mandatory injunction. It is quite clear from our review of the record that Mr. Plauche is also seeking to have the City renew or restore the STR licenses for units 1B and 2A— i.e., he is praying for relief which goes beyond simply maintaining the status quo. In the portion of the Petition praying for a preliminary injunction, Mr. Plauche explicitly alleges that the denial of permits to a legal nonconforming use is unconstitutional and asks that the City be enjoined from interfering in his use of the property because he is entitled to permits. Further, in his brief to this Court, Mr. Plauche refers to the STR licenses for units 1B and 2A as having been revoked by operation of the 2023 Ordinances. We find this to be a mischaracterization of their status—the licenses inarguably expired on August 31, 2023; therefore, the status quo for those licenses is that they are expired. As this Court has previously explained, "Louisiana is a fact pleading state that values substance over form and does not require the use of magic titles or terminology as a threshold requirement for validly pleading an action." *I.F. v. Adm'rs of Tulane Educ. Fund*, 11-0308, p. 4 (La. App. 4 Cir. 8/24/11), 72 So.3d 462, 465.

In an analogous case, *I.F. v. Administrators*, a student who was found guilty of sexual misconduct by the Joint Hearing Board of Tulane University filed a

petition for preliminary injunction. The petition sought to enjoin Tulane "from imposing the ordered discipline . . . and [prayed] that all reference to the charge and/or the discipline be removed from his academic record." *Id.* This Court determined that, as in the case *sub judice*, the plaintiff was seeking more than just maintaining the status quo. Upon examining the pleading, this Court reasoned that "[a] preliminary injunction will issue only in its prohibitory form." *Id.* "However, when a defendant obstructs the plaintiff in the enjoyment of a real right, the latter may be entitled to a prohibitory injunction restraining the disturbance and also to a mandatory injunction for the removal of the obstruction or to undo what has been illegally done." *Id.* (citing *Concerned Citizens for Proper Plan., LLC v. Par. of Tangipahoa*, 04-0270, 0249, pp. 6-7 (La. App. 1 Cir. 3/24/05), 906 So.2d 660, 664). Therefore, because "[a] mandatory injunction is one that commands the doing of some action; it cannot be issued without a hearing on the merits with live evidence and stipulations of fact by the parties." *Id.* at pp. 4-5, 72 So.3d at 465. "Further, since the jurisprudence has established that a mandatory injunction has the same basic effect as a permanent injunction, it may not issue on merely a [*prima facie*] showing that the party seeking the injunction can prove the necessary elements." *Id.* at p. 5, 72 So.d at 465. "Instead, the party seeking a mandatory injunction must show by a preponderance of the evidence at an evidentiary hearing that he is entitled to the preliminary injunction." *Id.* (citing *Concerned Citizens*, 04-0270, p. 7, 906 So.2d at 664). "Likewise, a permanent injunction may be issued only after a trial on the merits at which the burden of proof is a preponderance of the evidence." *Id.* "It therefore stands to reason, that the [district] court may not deny a mandatory injunction merely because the plaintiff is

12

unable to make the [*prima facie*] showing required for a preliminary injunction."
*Id.*

In *Ard*, this Court faced another similar circumstance as that found in the instant matter. There, the plaintiff filed a petition for a preliminary injunction, which sought to prohibit the defendant from exerting any operational control or from having access to the assets of a business the two co-owned. After a hearing, the district court granted the preliminary injunction based on a finding that the plaintiff had presented *prima facie* evidence sufficient to obtain a prohibitory preliminary injunction. On appeal, this Court found that "although framed in the negative, [the petition for preliminary injunction] constituted a command for [the defendant] to 'do something'—give [the plaintiff] exclusive access and control of [the business]." *Ard*, 19-0312, p. 18, 364 So.3d at 369. Reasoning that the request for injunctive relief was actually one for a mandatory injunction, this Court remanded the matter to the district court, noting that "the party seeking a mandatory injunction must prove by a preponderance of the evidence at an evidentiary hearing, 'with live evidence and stipulations of fact by the parties,' the party's right to a mandatory injunction." *Id.* at pp. 18-19, 364 So.3d at 369 (citations omitted).

Applying the same rationale we used in *Ard*, although couched in the negative, Mr. Plauche's prayer for preliminary injunctive relief is in actuality a command that the City issue STR licenses to him for units 1A and 2B; therefore, we find that he is seeking mandatory injunctive relief disguised as a request for a preliminary injunction. Accordingly, the district court erred in applying the burden of proof used for a prohibitory preliminary injunction and for failing to hold a full

13

evidentiary hearing that included live evidence and stipulations of fact by the parties.

## DECREE

For the foregoing reasons, we vacate the district court's July 9, 2024 judgment, which denied Mr. Plauche's petition for preliminary injunction, and remand the matter for further proceedings consistent with this opinion.

**VACATED AND REMANDED**